**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JUNIOR ALBERTO SANTANA RAMIREZ, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | CIVIL ACTION |
| WARDEN OF FEDERAL DETENTION CENTER PHILADELPHIA, MICHAEL ROSE, *et al.* | : | No. 26-2970 |
| | : | |
| Respondents. | : | |

**MEMORANDUM**

**Perez, J.**                                                                                          **July 17, 2026**

Petitioner Junior Alberto Santana Ramirez seeks habeas relief from immigration detention. The petition will be granted. Respondents have detained Mr. Ramirez under 8 U.S.C. § 1226(a), a discretionary detention statute that applies while a noncitizen awaits a decision on whether he will be removed from the United States. That custody theory no longer fits the present posture of this case. On July 9, 2026, Immigration Judge Michael Engel made two rulings. First, he found that Mr. Ramirez was removable because he had overstayed his visa. ECF No. 22-1 at 1. Second, he granted Mr. Ramirez relief from removal by approving his application to adjust status under Immigration and Nationality Act ("INA") § 245. *Id.* at 2. In practical terms, the immigration judge did not order Mr. Ramirez removed from the United States. He did the opposite: he allowed Mr. Ramirez to remain by granting adjustment of status and terminating the removal proceedings. *Id.* at 2, 4.

1

The July 9 order also assumes Petitioner's release from custody. After granting adjustment and terminating proceedings, the immigration judge directed that "after release from custody," Mr. Ramirez would have thirty days to obtain, serve, and file medical examination records, and that DHS could move to reopen the removal proceedings if he failed to comply. ECF No. 22-1 at 2. The same order notes that Mr. Ramirez had not been produced for a third consecutive immigration hearing and that the Department of Homeland Security ("DHS") again offered no explanation for his absence. *Id.*

Respondents argue that Mr. Ramirez remains detained under § 1226(a) because DHS reserved appeal and the July 9 order is not administratively final while the appeal period remains open. ECF No. 23 at 1–2. DHS's right to appeal the July 9 order remains intact, but appellate rights do not themselves authorize Mr. Ramirez's continued detention. Respondents have not filed an appeal, identified a stay, produced a post-July 9 custody determination, or explained why a reserved appeal automatically permits continued detention after the immigration court granted relief from removal, terminated proceedings, and structured the remaining obligation around release.

The Court does not set aside the May 27 discretionary bond determination, set bond, or reweigh the immigration judge's bond factors. The Court grants habeas relief for a different reason: Respondents have not shown a lawful present basis to continue detaining Mr. Ramirez after the immigration court found him removable, granted him adjustment of status, terminated proceedings, assumed release, and recorded DHS's unexplained failure to produce him for three consecutive hearings.

2

## I.    BACKGROUND

Mr. Ramirez is a native and citizen of the Dominican Republic. ICE detained him on April 30, 2026. ECF No. 22 at 2. Respondents maintain that he was placed in removal proceedings and detained under 8 U.S.C. § 1226(a). ECF No. 4 at 1–2. Respondents produced an I-213, an administrative warrant, a Notice to Appear charging Mr. Ramirez as removable under 8 U.S.C. § 1227(a)(1)(B), and custody-determination paperwork. *See* ECF Nos. 4-1, 4-2, 4-3, 4-4. Mr. Ramirez disputes Respondents' assertion that those materials were served on April 30, 2026. He maintains that he was not served with a Notice to Appear or advised of the basis for his detention until after he filed this habeas petition. ECF No. 22 at 2.

Mr. Ramirez filed this action while detained at the Federal Detention Center in Philadelphia, seeking immediate release. ECF No. 1. The case initially raised urgent questions about the basis for his detention, the timing of service of immigration documents, and his transfer from FDC Philadelphia to Moshannon Valley Processing Center shortly after the petition was filed. The Court ordered expedited proceedings and required Respondents to address Mr. Ramirez's why he was transferred outside the Eastern District of Pennsylvania. *See* ECF Nos. 3, 8. Respondents later returned him to FDC Philadelphia, mooting the transfer issue. *See* ECF No. 16.

The case then focused on the administrative custody process under § 1226(a). Mr. Ramirez received a custody-redetermination hearing before Immigration Judge Tamar Wilson on May 27, 2026. ECF No. 19-4. He was represented by counsel, submitted evidence, presented argument, and responded to the immigration judge's questions. See ECF Nos. 19-3, 19-4. The immigration judge denied bond, finding that Mr. Ramirez had not met his burden and that no amount of bond would

mitigate his risk of flight. ECF No. 19-1; ECF No. 19-4 at 4. Mr. Ramirez reserved his right to appeal to the Board of Immigration Appeals ("BIA"). ECF No. 19-4 at 4.

On June 12, 2026, the Court held the habeas petition in abeyance pending the BIA's administrative review of the May 27 bond determination. ECF No. 20. The Court ordered Mr. Ramirez to file a status report by June 26, 2026, stating whether he had timely appealed to the BIA. *Id*. Mr. Ramirez did not file the required status report and did not appeal the May 27 bond determination. Respondents moved to lift the abeyance and dismiss the petition for failure to exhaust administrative remedies. ECF No. 21.

That posture was short-lived. On July 14, 2026, Mr. Ramirez filed a supplemental brief attaching a July 9, 2026 order issued by Immigration Judge Michael Engel. ECF Nos. 22, 22-1. The July 9 order found Mr. Ramirez removable under 8 U.S.C. § 1227(a)(1)(B), but granted him adjustment of status under INA § 245. ECF No. 22-1 at 1–2. Petitioner's adjustment was granted based on Mr. Ramirez's marriage to his United States citizen spouse, the spouse's testimony, and documentary review of the record. *Id*. at 2.

The July 9 order also describes DHS's failure to produce Mr. Ramirez. The immigration judge explained that Mr. Ramirez had not been presented for a third straight hearing and that, for the third straight hearing, DHS offered no explanation for failing to present him. ECF No. 22-1 at 2. After Mr. Ramirez's counsel waived his appearance, the immigration judge granted adjustment of status. *Id*. The order further states that, "after release from custody," Mr. Ramirez has thirty days to obtain, serve, and file medical examination records, unless granted an extension, and that DHS may move to reopen the removal proceedings if he fails to do so. Id. The order reflects that proceedings were terminated. *Id*. at 4. DHS reserved appeal, and the appeal deadline is August 10, 2026. *Id*.

Respondents now argue that the July 9 order does not require release because DHS reserved appeal and the order is not administratively final until the parties waive appeal, the appeal period expires, or any BIA appeal is adjudicated. ECF No. 23 at 1–2. Respondents further contend that, until then, Mr. Ramirez remains detained under § 1226(a) because the prior bond denial remains operative and Mr. Ramirez did not appeal that bond determination. *Id*. at 2.

## II.    JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 2241 to decide whether Mr. Ramirez is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

The Court recognizes the jurisdictional limit in 8 U.S.C. § 1226(e). That provision bars judicial review of discretionary judgments regarding detention, release, bond, or parole. It prevents this Court from reweighing bond factors, setting a bond amount, or substituting its view of flight risk or danger for that of the immigration judge. The Court does none of those things.

The issue now before the Court is different. The Court is deciding whether Respondents have shown a lawful present basis to continue detaining Mr. Ramirez after a later immigration-court order found him removable, granted him relief from removal, terminated proceedings, assumed release, and identified DHS's repeated unexplained failure to produce him. That question concerns the legality of present custody, not the discretionary weighing of bond evidence. Section 1226(e) does not bar habeas review of constitutional claims or legal questions concerning the Government's authority to detain. *See Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018); *Demore v. Kim*, 538 U.S. 510, 516–17 (2003). The Court therefore has jurisdiction to decide whether Mr. Ramirez's continued detention remains lawful.

### III.    DISCUSSION

Respondents continue to defend Mr. Ramirez's custody under 8 U.S.C. § 1226(a). That position is no longer adequate. Section 1226(a) may have supplied the initial custody framework while Mr. Ramirez's removal proceedings were pending. Following the July 9 order, Respondents must do more than invoke § 1226(a) by label. They must show that the statute still fits Mr. Ramirez's present posture and that continued detention remains lawful. They have not done so.

**A. Respondents Have Not Shown That § 1226(a) Still Supplies a Lawful Present Basis for Custody**

This case does not involve the mandatory detention theory rejected in many recent immigration habeas cases. Respondents do not invoke 8 U.S.C. § 1225(b)(2)(A). They have instead consistently maintained that Mr. Ramirez is detained under § 1226(a). See ECF No. 4 at 1–2; ECF No. 23 at 2. The question is whether that statute still supplies a lawful present basis for custody after the immigration court's July 9 order.

Section 1226(a) authorizes detention "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). That phrase is not incidental. Section 1226(a) supplies pre-final-order detention authority while the immigration process remains unresolved. *Jennings v. Rodriguez*, 583 U.S. 281, 288–89, 303–04 (2018). It governs custody while the immigration process is deciding whether the noncitizen will be removed. It does not create an automatic or self-perpetuating detention regime that continues unchanged after the immigration court has found the person removable, granted relief from removal, and terminated proceedings.

Here, the immigration judge has already decided whether Mr. Ramirez will be removed at this stage of the immigration proceedings. On July 9, 2026, Immigration Judge Michael Engel found Mr. Ramirez removable under 8 U.S.C. § 1227(a)(1)(B), but did not order him removed.

6

Instead, Judge Engel granted Mr. Ramirez relief from removal by approving adjustment of status under INA § 245 and terminating proceedings. ECF No. 22-1 at 1–2, 4. The adjustment was granted based on Mr. Ramirez's marriage to his United States citizen spouse, the spouse's testimony, and documentary review of the record. *Id*. at 2. Mr. Ramirez is therefore not waiting for the immigration court to decide whether he will be removed. The immigration court has already found him removable, granted him relief from removal, and ended the proceedings unless DHS successfully pursues further administrative review.

Respondents frame the remaining dispute as one of administrative finality. In their view, DHS's reservation of appeal means the July 9 order is not final unless DHS waives appeal, the appeal period expires, or the BIA resolves any appeal. ECF No. 23 at 1–2. The Court accepts that limited point for present purposes. DHS remains free to pursue any appeal the regulations permit. This decision does not declare the July 9 order administratively final, foreclose DHS from seeking BIA review, or place the adjustment grant beyond the ordinary administrative process.

Administrative non-finality, however, does not answer the custody question.[1] The Government's appeal preserves its ability to seek review of the immigration judge's decision. It does not make continued detention constitutionally self-justifying. *See Uritsky v. Ridge*, 286 F. Supp. 2d 842, 846–47 (E.D. Mich. 2003) (granting habeas relief where the Government's appeal stayed orders terminating removal proceedings and granting bond because continued detention required an adequate individualized justification).

Respondents have not shown that DHS has actually filed an appeal from the July 9 order. They have not identified any stay of that order. They have not produced any custody determination

---

[1] Respondents' cited decisions establish, at most, that an IJ's decision does not become administratively final while a timely appeal remains available or pending. They do not establish that nonfinality alone is a sufficient justification for continued detention. Indeed, *Uritsky* granted habeas relief even though the Government had appealed the IJ's orders terminating proceedings and granting bond. 286 F. Supp. 2d at 843, 846–47.

made after the immigration judge granted adjustment of status and terminated proceedings. Nor have they explained why the mere reservation of appellate rights automatically leaves Mr. Ramirez in the same § 1226(a) custody posture that existed before the immigration court granted him relief from removal. Respondents have shown, at most, that DHS may still seek BIA review. They have not shown that Mr. Ramirez may be kept in custody while DHS decides whether to pursue that review.

That distinction matters because § 1226(a) is discretionary even when it applies. The statute permits detention, but it also permits release on bond or conditional parole. 8 U.S.C. § 1226(a)(1)–(2). It does not require detention during an appeal period. It does not authorize the Government to keep a person jailed merely by invoking the words "not final." It does not allow Respondents to rely on a pre-July 9 custody decision without explaining why that decision remains adequate after the immigration court granted Mr. Ramirez relief from removal and terminated proceedings.

The July 9 order confirms that continued detention was not the expected consequence of the immigration judge's ruling. After granting adjustment of status, the immigration judge provided that, "after release from custody," Mr. Ramirez would have thirty days to obtain, serve, and file medical examination records, unless granted an extension, and that DHS could move to reopen the removal proceedings if he failed to do so. ECF No. 22-1 at 2. That language is not surplusage. The immigration judge did not merely mention release in passing; he structured the next step in the case around release. The order gives Mr. Ramirez a post-release obligation and gives DHS a post-release remedy. It does not describe continued detention as the expected posture while DHS considers whether to appeal.

The Court does not read the "after release" language as a direct release order. Its significance is different. The immigration judge granted adjustment, terminated proceedings, and

then set a deadline that begins only "after release from custody." *Id*. The order therefore assumes that release—not continued detention—would follow the grant of adjustment. It also gives DHS a remedy if Mr. Ramirez fails to comply after release: DHS may move to reopen the removal proceedings. *Id*. Respondents do not explain why Mr. Ramirez should remain detained despite an order that grants relief, ends the proceedings, and structures the remaining obligation around his release.

The order also records DHS's unexplained failure to produce Mr. Ramirez for three consecutive hearings. *Id*.[2] The Court need not decide whether that failure independently violated due process. Its relevance is practical and statutory. Respondents defend detention under a statute whose purposes include securing appearance while proceedings are pending. Yet the immigration court's own order states that detention did not secure Mr. Ramirez's appearance for three straight hearings, and that DHS offered no explanation. That history undercuts Respondents' attempt to justify continued custody through the same pre-July 9 detention posture without any fresh assessment.

Respondents therefore have not shown that § 1226(a) still supplies a lawful present basis for Mr. Ramirez's custody in the manner they assert. Mr. Ramirez has shown a material change in posture: adjustment granted, proceedings terminated, release assumed, and DHS faulted for failing

---

[2] Respondents' supplemental response does not alter this conclusion. Respondents now explain that DHS failed to present Petitioner for three consecutive immigration hearings because this Court's no-transfer orders prevented ICE from moving him outside the Eastern District of Pennsylvania, and because FDC Philadelphia allegedly could not facilitate virtual appearances before the Elizabeth Immigration Court for detainees subject to those orders. ECF No. 25 at 2. That explanation does not justify continued detention. The Court's no-transfer orders did not authorize DHS to miss immigration hearings without explanation, nor did they prevent Respondents from seeking clarification, modification, or leave from this Court if they believed compliance with both this Court's orders and the immigration court's hearing schedule was impossible. Respondents did not do so. They instead allowed Petitioner to miss three hearings, offered no explanation to the immigration court, and now rely on the resulting non-finality of the immigration process to continue detaining him. That sequence reinforces, rather than cures, the absence of a lawful current custody justification.

to produce him. Respondents' only answer is reserved appeal. That answer preserves appellate rights. It does not establish lawful present detention.

**B.  The Prior Bond Denial Does Not Justify Continued Detention After the July 9 Order**

Respondents also rely on the May 27 bond denial and Mr. Ramirez's failure to appeal it to the BIA. ECF Nos. 21, 23. That argument would have had force before July 9, but it does not answer the present custody question.

Mr. Ramirez received the custody process formally available under § 1226(a). He requested a custody-redetermination hearing, received one, and was denied bond on May 27. ECF Nos. 19-1, 19-4. He reserved appeal but did not pursue it. ECF No. 19-4 at 4; ECF No. 21. Had the case remained in that posture, the failure to pursue BIA review would have presented a serious exhaustion issue.

The case did not remain in that posture. The May 27 bond decision was made before the immigration court granted adjustment of status, terminated proceedings, assumed release, and criticized DHS's unexplained failure to produce Mr. Ramirez. ECF No. 22-1 at 2, 4. The bond decision therefore rests on a materially different record. It cannot, standing alone, answer the present custody question.

Respondents have supplied no current justification. They do not claim ICE made a new custody determination after July 9. They do not identify any updated assessment of flight risk or danger. They do not explain why conditions of release would be inadequate. They do not identify any post-July 9 conduct by Mr. Ramirez that supports detention. They do not explain why DHS's possible appeal requires incarceration rather than supervised release. And they do not explain why the immigration judge's post-release compliance framework should be ignored.

Respondents instead ask the Court to treat DHS's reserved appeal as dispositive. The Court will not do so. A reserved appeal is not a custody determination. It is not a finding of danger. It is not a finding of flight risk. It is not a conclusion that conditions of release are inadequate. It is simply a preservation of DHS's ability to seek BIA review of the July 9 order. The Government may preserve appellate rights without keeping Mr. Ramirez in custody.

Mr. Ramirez's failure to appeal the May 27 bond denial likewise does not control the present question. An appeal from that bond decision would have asked the BIA to review the custody record as it existed before the July 9 order. It would not have presented the question now before this Court: whether Respondents may continue to detain Mr. Ramirez after an immigration judge granted adjustment, terminated proceedings, assumed release, and recorded DHS's repeated unexplained failure to produce him. The Court does not excuse Mr. Ramirez's noncompliance with the June 12 abeyance order lightly. However, exhaustion of the May 27 bond appeal does not allow Respondents to ignore a later immigration-court order that materially altered the basis for custody.

This is not discretionary bond review. The Court is not setting aside the May 27 bond denial. It is not setting a bond amount. It is not substituting its view of flight risk or danger for the immigration judge's discretionary judgment. The Court instead grants habeas relief because Respondents have not shown lawful present custody after later proceedings changed the legal and factual posture. That is a habeas custody question, not discretionary bond review.[3]

---

[3] The Court's conclusion does not depend on reweighing the May 27 bond record. The Court notes only that the record before the bond immigration judge was incomplete in ways that make reliance on that pre-July 9 custody determination especially inadequate after the later grant of adjustment. The bond record included an unresolved account of Mr. Ramirez's Pennsylvania conviction, limited documentation concerning his marriage and immigration relief, and no police report, affidavit of probable cause, or comparable record describing the conduct underlying the criminal case. See ECF Nos. 19-3, 19-4. The Government characterized the conviction as a firearms or weapons offense, but the record before the immigration judge did not clearly establish that fact. *See* ECF No. 19-4 at 2–4. The Court does not decide whether the May 27 bond ruling was correct. It holds only that the earlier decision cannot substitute for a current custody justification after the immigration court later granted adjustment, terminated proceedings, and assumed release.

The holding is narrow but decisive. DHS may still appeal the July 9 order to the BIA. The Court does not declare that order administratively final. The Court does not prevent any future lawful custody action supported by a new statutory basis and individualized determination. The Court holds only that Respondents have not justified Mr. Ramirez's continued detention now. Section 1226(a), if still applicable at all, is discretionary. A reserved appeal does not automatically authorize continued incarceration. Given the July 9 order granting adjustment, terminating proceedings, assuming release, and faulting DHS's repeated unexplained failure to produce Mr. Ramirez, continued detention is no longer reasonably tethered to a current lawful custody justification.

## IV.    CONCLUSION

The Court grants the petition. It does not decide the administrative finality of the July 9 adjustment order. It does not bar DHS from appealing that order. It does not review the May 27 bond denial or substitute its judgment for the immigration judge's discretionary custody determination. Rather, the Court holds only that Respondents have not justified Mr. Ramirez's continued physical detention after the immigration court found him removable, granted adjustment of status, terminated proceedings, assumed release, and identified DHS's repeated unexplained failure to produce him.

Mr. Ramirez is entitled to habeas relief. This relief is without prejudice to DHS's right to pursue any appeal from the July 9, 2026 immigration court order and without prejudice to any lawful future custody action supported by a new statutory basis and individualized custody determination.